UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge |
| vs. | ) | |
| | ) | |
| FUNDS IN THE AMOUNT OF $208,046 | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant, *In Rem*. | ) | |
| | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE, *IN REM***

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture *In Rem*.

Plaintiff hereby alleges as follows:

**Nature of the Action**

1.  This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2.  This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3.  This civil action *in rem* is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C), because it: (1) was involved in,

(2) was used or intended to be used to facilitate, (3) was furnished or intended to be furnished in exchange for, or (4) is proceeds (or property) traceable to, a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(A).

4.  Based upon the facts and circumstances herein set forth, Plaintiff prays: (1) that process issue for an arrest warrant *in rem* for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

5.  This complaint is verified by the attached Verification of Drug Enforcement Administration ("DEA") Task Force Agent Ronald M. Brunzie ("TFO Brunzie"), which is fully incorporated herein.

### The Defendant *In Rem*

6.  The Defendant *in rem* consists of the following property:

- $208,046.00 (two-hundred eight thousand and forty-six dollars) in United States currency.

(Hereinafter, the "subject property").

7.  The subject property was seized on July 24, 2018, by the DEA Group 24 Task Force ("Group 24") operating out of Midway Airport in Chicago, Illinois ("Midway"), to which TFO Brunzie is assigned.

8.  The subject property is currently in the custody of the United States Marshals Service.

### Jurisdictional Statement

9.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this action is commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a)

because this is an action for forfeiture.

10. This Court has *in rem* jurisdiction over the subject property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

**Basis for Forfeiture**

12. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

13. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

14. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from "proceeds traceable" to "dealing in a controlled substance" under

18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

## Summary of Facts

15. On July 24, 2018, members of DEA Group 24 conducted a consensual interview and search at Midway Airport, which led to the discovery and seizure of the subject property from Clayton Andrew Deloach ("Deloach") and Narae Natasha Byrd ("Byrd"), passengers traveling together on one-way tickets via Southwest Airlines flight 2048 from Chicago, Illinois to Los Angeles, California.

16. A police canine certified by the State of Illinois, the North American Police Work Dog Association ("NAPWDA"), and Vapor Wake K9, demonstrated as a positive alert on the subject property, indicating the presence of one of five odors he is trained to detect.

17. Based upon the experience of DEA Group 24 officers, including TFO Brunzie, and the totality of the circumstances further described below, the subject property was seized for forfeiture.

## Facts

I.  Airport Interdiction and Discovery of the Subject Property

    A.  Overview of DEA Group 24 at Midway

18.  This Complaint describes an investigation conducted by members of DEA Group 24 at Midway, to which TFO Brunzie is a member.

19.  The primary responsibility of Group 24 is to investigate crimes involving the use of commercial airlines and shipping companies to transport illegal drugs and drug proceeds.

20.  Based upon the experience of Group 24 investigators and in similar investigations across

the United States, it is common knowledge that cities in the mid-west and east coast are demand locations for illicit drugs.

21.   States such as Arizona and California are considered source locations due to their close proximity to the border of Mexico and established drug transportation routes.

22.   Person(s) involved in the illegal drug trade, often hire couriers to transport drugs and or proceeds from the sale of drugs by utilizing commercial airlines and shipping companies.

23.   In an effort to identify and disrupt potential drug and/or money couriers related to drug organizations and criminal syndicates, investigators utilize a variety of resources, including confidential informants, suspicious flight itineraries, other law enforcement agencies, and prior knowledge of criminal activity or intelligence.

24.   Factors that constitute suspicious flight itineraries include airfare purchase at the counter immediately prior to departure or short notice reservations for one-way travel, sometimes paid in cash.

25.   In addition, Group 24 investigators know it is common for couriers to utilize a third-party credit card to purchase airfare and to provide inaccurate or not in-service telephone numbers to airline companies.

26.   Couriers travel with minimal or no luggage and often attempt to board the aircraft at the last possible moment.

27.   Drug and/or money couriers utilize these techniques in an attempt to conceal their identities from law enforcement and minimize their exposure to commercial airlines.

   B.   Interview with Passengers Deloach and Byrd

28.   On July 24, 2018, law enforcement officers assigned to Group 24 were alerted to the suspicious travel itinerary of Deloach and Byrd.

29.  Deloach and Byrd were traveling together on one-way tickets via Southwest Airlines flight 2048 from Chicago, Illinois to Los Angeles, California.

30.  The tickets were purchased by Deloach the same day, on July 24, 2018.

31.  Based upon the training and experience of Group 24 investigators, illegal drug couriers often purchase airline tickets one day or so prior to the scheduled departure.

32.  Group 24 investigators also know Los Angeles, California, and the central California region in particular, to be a known source area for illegal drug trafficking.

33.  Further, Group 24 investigators also know that those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep them on their person or accompanying bags or suitcases.

34.  As such, Group 24 investigators sought to conduct a consensual interview of Deloach and Byrd prior to boarding Southwest Airlines flight 2048.

35.  At approximately 7:20 p.m., Group 24 investigators established surveillance near gate B11 at Midway, the gate for the outbound Southwest Airlines flight 2048, in an attempt to interview Deloach and Byrd.

36.  At the time, the investigators were dressed in civilian clothing with no weapons, radios, or other law enforcement paraphernalia visible.

37.  Shortly thereafter, TFO Brunzie asked the Southwest Airlines desk agent to page passengers Deloach and Byrd.

38.  After the page, TFO Brunzie observed Deloach leave his seat next to Byrd and walk toward the ticket agent counter.

39.  Once at the ticket agent counter, TFO Brunzie identified himself as a law enforcement officer by displaying his credentials and badge.

6

40.  TFO Brunzie then requested to speak with Deloach.

41.  TFO Brunzie informed Deloach that he was not under arrest and was not in any trouble.

42.  Deloach stated that he understood and agreed to speak with TFO Brunzie.

43.  TFO Brunzie then asked Deloach where Byrd was.

44.  Deloach paused and stated Byrd was in the bathroom.

45.  At the time of Deloach's response, agents observed Byrd seated in the waiting area of gate B11.

46.  TFO Brunzie then requested to see Deloach's boarding pass and identification.

47.  In response to this, Deloach walked back toward the seat next to Byrd, retrieved a wallet from a black Air Jordan® back pack, picked up a black-and-red Gucci® bag, and walked back towards TFO Brunzie carrying the black-and-red Gucci® bag.

48.  Deloach left behind the black Air Jordan® back pack.

49.  When TFO Brunzie asked Deloach why he left the black Air Jordan® back pack behind, Deloach replied "[i]t isn't mine."

50.  Deloach produced a state of Illinois Identification card and a boarding pass.

51.  TFO Brunzie noted the information contained on the documents and immediately returned them to Deloach.

52.  When asked where he was traveling, Deloach stated that he was going to Los Angeles.

53.  When asked whether his travel was business or pleasure, Deloach stated he was traveling for business, to purchase a vehicle.

54.  When TFO Brunzie asked Deloach if he was traveling alone, Deloach said no, pointed toward Byrd, and said he was with her.

55.  Deloach stated he did not know where he was staying or for how long.

56.  TFO Brunzie asked Deloach whether anyone had asked him to carry, bring, or hold anything for him during his travel, and Deloach said "[n]o."

57.  Deloach stated that he had packed his luggage.

58.  TFO Brunzie asked Deloach if he had any checked luggage, to which Deloach replied "[n]o."

59.  When TFO Brunzie then asked Deloach if he was carrying any electronic devices, liquids, weapons, illegal drugs, or large amounts of currency, Deloach stated that he had one cell phone, $15,000 in his backpack, and answered "[n]o" to all other questions.

60.  While TFO Brunzie was speaking with Deloach, DEA Special Agent Kevin Frankel ("SA Frankel") and TFO Torrence Johnson ("TFO Johnson") approached Byrd, who was still sitting in the waiting area of gate B11.

61.  TFO Johnson proceeded to have a consensual conversation with Byrd after identifying himself as a law enforcement officer.

62.  During the course of the interview with Byrd, agents performed a consensual search of Byrd's luggage.

63.  A total of $226,820 in U.S. currency was discovered in Byrd's luggage.

C.  Discovery of the Subject Property

64. In order to verify his statements, TFO Brunzie asked Deloach for permission to search all of his carry-on bags.

65. At this time, Deloach gave oral consent to search his luggage.

66. TFO Scott Opelt ("TFO Opelt") then searched Deloach's black-and-red Gucci® bag and discovered several rubber-banded bundles of U.S. currency.

67. Based on TFO Opelt's training and experience, the bundles appeared to contain more

than $15,000.00.

68. When TFO Brunzie asked Deloach about the U.S. currency, Deloach shrugged his shoulders and did not verbally respond.

69. When TFO Brunzie asked Deloach if the black Air Jordan® backpack was his, Deloach said "[y]es."

70. TFO Brunzie then asked Deloach for permission to search the black Air Jordan® backpack.

71. At this time, Deloach gave oral consent to search the black Air Jordan® backpack.

72. When TFO Opelt then searched Deloach's black Air Jordan® back pack, he detected a strong odor of marijuana coming from the bag, and discovered several additional rubber-banded bundles of U.S. currency.

73. When TFO Brunzie asked Deloach if he smokes marijuana, and if he smoked it that day, Deloach replied "[y]es" to both.

74. A total of $208,046 in U.S. currency was found in both the black-and-red Gucci® bag and the black Air Jordan® backpack.

75. The subject property consisted of 1,797 one hundred-dollar bills, 436 fifty-dollar bills, 326 twenty-dollar bills, 5 five-dollar bills, and 1 one-dollar bill.

76. TFO Brunzie advised Deloach that agents were going to detain the U.S. currency for further investigation, including examination by a canine.

     D.  Questioning at the DEA Midway Office

77. TFO Brunzie next informed Deloach that he could accompany agents to the DEA Midway office or was free to board his flight to California.

78. Deloach agreed to accompany agents to the DEA Midway office.

79. At the DEA Midway office, when TFO Brunzie asked Deloach about the subject property, Deloach stated that $50,000 of it was his to purchase a vehicle.

80. Deloach did not know what type of vehicle he was going to purchase, where in Los Angeles he was going to purchase the vehicle, what the contact information was of the seller, or have a picture of the vehicle.

81. Deloach told TFO Brunzie that he did not know how much more than $50,000 was contained in the recovered currency.

82. According to Deloach, his cousin Willie Williams ("Williams") gave him the balance of the subject property, for the purpose of purchasing property in Los Angeles.

83. Deloach provided TFO Brunzie the age, phone number, and general location in Chicago for Williams.

84. Deloach did not know where in Los Angeles the property was located that Williams told him to purchase.

85. When TFO Brunzie asked Deloach if he had any information about the property he was buying, Deloach then stated he did not want to answer any more questions.

86. Deloach then signed an address acknowledgement form and was issued a receipt for the seized currency.

E.  Canine Examination of the Subject Property

87. Amtrak Officer Robert J. Crowley ("Officer Crowley") utilized his certified narcotics detection canine, Gander, to examine the currency in Deloach's possession.

88. Gander is currently five years old and Officer Crowley is Gander's second handler.

89. Gander is certified with by the State of Illinois (most recently on August 30, 2018), the NAPWDA (most recently on April 4, 2018), and Vapor Wake K9 (most recently on April 6,

2018).

90. Gander was last certified prior to this investigation by the State of Illinois on November 29, 2017.

91. Gander is trained and certified to detect five odors: (1) marijuana, (2) cocaine, (3) heroin, (4) ecstasy, and (5) methamphetamine.

92. If at any time during a search Gander smells one of the five odors he is trained to detect, Gander will alert with an active/passive alert at the area where she smells the odor.

93. Gander's search/sniff was conducted on July 24, 2018 at the garage parking area located within the John C. Kluczynski Federal Building in Chicago, Illinois (the "Kluczynksi garage").

94. At the time of the search/sniff at the the Kluczynksi garage, there were three cars in the immediate area and a guard shack with a guard present.

95. Officer Crowley brought Gander into the Kluczynksi garage and gave him the command to search/sniff.

96. As Gander entered the Kluczynksi garage and neared the first hidden bag that contained a portion of the currency, Officer Crowley observed Gander sniff the air, focus his stare, and sit.

97. Officer Crowley gave Gander the command to again search/sniff.

98. As Gander neared the second hidden bag that contained the remainder of the currency, Officer Crowley observed Gander focus his stare and sit.

99. Officer Crowley recognized this behavior as a positive alert indicating Gander smelled one of the five odors she is trained to detect.

100. Officer Crowley did not recognize behavior from Gander indicating an interest in any other items or vehicles in the area.

      F.   Seizure of the Subject Property for Forfeiture

101. At this time, Group 24 investigators seized the subject property for forfeiture per DEA guidelines governing asset forfeiture.

102. Byrd and Deloach left with no further incident.

II. Additional Details and Further Investigation

103. On July 25, 2018, TFO Brunzie contacted Williams at the phone number provided by Deloach.

104. Williams confirmed that he knew Deloach, but that he did not give Deloach any money to purchase property in Los Angeles.

A. Travel History of Deloach

105. The following airline ticket information was provided by Southwest Airlines:

a) A one-way ticket was purchased on July 18, 2018, for travel by Deloach from Los Angeles, California to Chicago, Illinois on Southwest Airlines flight 1553. Deloach boarded flight 1553 in Los Angeles on July 18, 2018. Deloach did not check any luggage on flight 1553.

b) A one-way ticket was purchased on June 29, 2018, for travel by Deloach from Chicago, Illinois, to Los Angeles, California on Southwest Airlines flight 687. Deloach boarded flight 687 and departed Chicago on June 29, 2018. Deloach did not check any luggage on flight 687.

c) A one-way ticket was purchased on June 27, 2018, for travel by Deloach from Los Angeles, California to Chicago, Illinois on Southwest Airlines flight 332. Deloach boarded flight 332 and departed Los Angeles on June 27, 2018. Deloach did not check any luggage on flight 332.

d) A one-way ticket was purchased on June 7, 2018, for travel by Deloach from Los Angeles, California to Chicago, Illinois on Southwest Airlines flight 1553. Deloach boarded

flight 1553 and departed Los Angeles on June 8, 2018. Deloach did not check any luggage on flight 1553.

e) A one-way ticket was purchased April 12, 2018, for travel by Deloach from Los Angeles, California to Chicago, Illinois on Southwest Airlines flight 4008. Deloach boarded flight 4008 and departed Los Angeles on April 14, 2018. Deloach did not check any luggage on flight 1553.

B. Criminal History of Deloach

106. On July 31, 2006, Deloach was convicted in the United States District Court for the District of South Dakota, Southern Division, of conspiracy to distribute and possess with intent to distribute a controlled substance pursuant to Title 21, United States Code, Sections 846 and 841(a)(1).

107. Deloach was sentenced to 60 months incarceration and to a term of 5 years of supervision upon release from imprisonment.

108. On or about May 8, 2010, Deloach's supervised release was transferred to the Northern District of Illinois.

109. On May 9, 2011, the United States District Court for the Northern District of Illinois revoked Deloach's supervised release and sentenced him to nine months incarceration, with a self-surrender date of July 6, 2011.

110. Deloach failed to appear at a mandatory status hearing scheduled for May 24 2011, and on that day a bench warrant was issued for his arrest.

111. On or about September 6, 2012, Deloach was arrested on the outstanding bench warrant and began to serve his sentence on the probation revocation conviction.

112. Deloach was released from the Bureau of Prisons on or about May 31, 2013.

13

113.   Since his release in 2013, Deloach has been arrested by the Chicago Police Department in 2014, 2015, and three times in 2016 for illegal drug-related offenses.

114.   Most recently, Deloach was arrested in August 2018 by the San Bernardino Police Department for an illegal drug-related offense.

III.   Administrative Forfeiture Proceedings

115.   On August 21, 2018, DEA initiated administrative forfeiture proceedings against the $226,820 seized from Byrd by mailing a Notice Letter and Notice of Seizure to all potential interest holders by certified mail.

116.   As no timely or valid claims were filed in that administrative proceeding, on November 20, 2018, DEA issued a Declaration of Administrative Forfeiture as to the $226,820.

117.   On August 21, 2018, DEA also initiated administrative forfeiture proceedings against the subject property now at issue by mailing a Notice Letter and Notice of Seizure to all potential interest holders by certified mail.

118.   In response to this notice, Attorney Darryl A. Goldberg, of the Law Offices of Darryl A. Goldberg, on behalf of Deloach, sent a letter dated September 14, 2018 to DEA.

119.   Goldberg's letter included a Verified Claim executed by Deloach and a copy of the Notice of Seizure issued by DEA.

120.   On September 25, 2018, DEA referred this matter to the United States Attorney's Office in Chicago to initiate judicial forfeiture proceedings.

**First Cause of Action**

121.   Plaintiff repeats and realleges the averments in paragraphs one through 120 as though fully set forth herein.

122.   For the reasons set forth above, the subject property is subject to forfeiture pursuant to

21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

123.  Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [21 U.S.C. §§ 801-904], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [thereof]" are subject to forfeiture to the United States. *Id*.

**Second Cause of Action**

124.  Plaintiff repeats and realleges the averments in paragraphs one through 120 as though fully set forth herein.

125.  For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§    1956, 1957, or 1960; to wit, "dealing in a controlled substance" a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

126.  Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

127.  Pursuant to 18 U.S.C. § 1956:

(3)Whoever, with the intent—
    (A) to promote the carrying on of specified unlawful activity;
    (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
    (C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

128.　The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

129.　The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" *See* 18 U.S.C. § 1961(1)(A).

**Third Cause of Action**

130.　Plaintiff repeats and realleges the averments in paragraphs one through 120 as though fully set forth herein.

131.　For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952, a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

132.　Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

133.    Pursuant to 18 U.S.C. § 1956:

>    (3) Whoever, with the intent—
>    (A) to promote the carrying on of specified unlawful activity;
>    (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
>    (C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

134.    The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

135.    The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

136.    Section 1952(a) describes the following as an indictable act:

>    (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>     (1) distribute the proceeds of any unlawful activity; or
>     (2) commit any crime of violence to further any unlawful activity; or
>     (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

18 U.S.C. § 1952(a).

137.    Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]".

**Fourth Cause of Action**

138.    Plaintiff repeats and realleges the averments in paragraphs one through 120 as though fully set forth herein.

139.    For the reasons set forth above, the subject property is subject to forfeiture pursuant to

18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to "dealing in a controlled substance," a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

140.   Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. See 18 U.S.C. § 981(a)(1)(C)(2018).

141.   The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

142.   The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" See 18 U.S.C. § 1961(1)(A).

**Fifth Cause of Action**

143.   Plaintiff repeats and realleges the averments in paragraphs one through 118 as though fully set forth herein.

144.   For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952 ([i]nterstate and foreign travel or transportation in aid of racketeering enterprises), a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

145.   Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which

constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified

unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States.

*See* 18 U.S.C. § 981(a)(1)(C)(2018).

146.   The term "specified unlawful activity" means "any act or activity constituting

an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

147.   The list of offenses under section 1961(1)(A) are further defined as "racketeering

activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. §

1961(1)(A).

148.   Section 1952(a) describes the following as an indictable act:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or
> any facility in interstate or foreign commerce, with intent to—
>   (1) distribute the proceeds of any unlawful activity; or
>   (2) commit any crime of violence to further any unlawful activity; or
>   (3) otherwise promote, manage, establish, carry on, or facilitate the
> promotion, management, establishment, or carrying on, of any unlawful activity[.]

18 U.S.C. § 1952(a).

149.   Section 1952(b) further describes "unlawful activity" as, "any business enterprise

involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled

Substances Act)[.]"

## Prayer for Relief

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United

States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp.

G(3)(b), respectfully, prays:

1)   That process issue for an arrest warrant *in rem* for the subject property, which Plaintiff

will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2)   That due notice be given to all parties to appear and show cause why forfeiture of the

subject property to the United States in accordance with the claims herein set forth should not be decreed;

3)  That this Court enter a judgment of forfeiture for the subject property to the United States; and

4)  That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

DATED this 17th day of December 2018.

JOHN R. LAUSCH, JR.
United States Attorney
For the Northern District of Illinois

By:     *Jeffrey R. Borup*
_____
JEFFREY R. BORUP
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
Desk: (312) 697-4087
Email: jeffrey.borup@usdoj.gov

Attorneys for Plaintiff
United States of America

NORTHERN DISTRIT OF ILLINOIS    )
                                         )     SS

COUNTY OF COOK                  )

## VERIFICATION

I, Ronald M. Brunzie, declare under penalty of perjury the following:

1.  I am a Task Force Officer with the Drug Enforcement Administration and have been so employed since May 2014.

2.  My duties and responsibilities as a Task Force Agent with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

3.  I have read the foregoing complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief.

4.  This statement is based upon my own personal knowledge as well as information I have received from other agents, persons, and documents; it does not include each and every fact known to me concerning this investigation, but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

Executed on the 17 of December 2018, in Chicago, Illinois.

RONALD M. BRUNZIE
Task Force Officer
Drug Enforcement Administration